Catherine DANIELS, Appellant,

v.

David MATHEWS, Secretary of Health, Education and Welfare of the United States, Appellee.

No. 77–1341.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1977.

Decided Dec. 29, 1977.

---

J. L. Whaley, Legal Aid Society of the City and County of St. Louis, Welfare Law Unit (argued), and Shirley E. Allen and Kim C. Brown, St. Louis, Mo., on brief, for appellant.

Wesley D. Wedemeyer, Asst. U. S. Atty. (argued), and Barry A. Short (former U. S. Atty.), St. Louis, Mo., on brief, for appellee.

Before VAN OOSTERHOUT, Senior Judge, and LAY and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

Catherine Daniels seeks review of the district court's order sustaining the decision of the Secretary of Health, Education and Welfare denying her Social Security disability benefits. The administrative law judge (ALJ) denied her application for supplemental income benefits and the Secretary in turn upheld this ruling. The claimant thereafter sought review before the federal district court. The district judge, on review of a magistrate's recommendation that substantial evidence supported the administrative decision, entered judgment in favor of the Secretary. We reverse the judgment and remand for further proceedings.

Mrs. Daniels was born on March 10, 1932, and has an 11th grade education. Her past work experience includes employment as a dishwasher, babysitter, and manager of a dry cleaning store. In 1955 she completed a 9-month vocational course in practical nursing. Commencing in 1960 she worked for five to six years as a nurse's aid.

Mrs. Daniels testified at the hearing that she quit working in 1969 due to a nervous condition. The sparse medical record demonstrates that she suffers from anxiety, headaches, dizziness and fatigue. The medical diagnoses reported varied from "depressive neurosis" to "chronic mild depressive reaction" and "acute anxiety neurosis." The claimant has undergone three surgical procedures since 1969: removal of adhesions around the bowel tract, a hysterectomy, and rectal surgery. She was again hospitalized for ten days in January, 1976.[1]

Mrs. Daniels testified that her family physician had told her she could no longer work because of her nervous condition. In October of 1975 one consulting psychiatrist, based upon a single examination, reported that claimant was "partially disabled from gainful employment." A psychiatric social worker who had given claimant supportive therapy over four months concluded in January of 1976 that Mrs. Daniels had not been able "to tolerate employment in the past year" and that she would be unable to tolerate employment in the coming year. Mrs. Daniels also had been treated by Dr. Tomelleri, a psychiatrist with the St. Louis Comprehensive Neighborhood Health Center. The record contains no report from him.

---

1. Claimant's family physician was Dr. L. Blount. The only report included in the record from this treating physician is a discharge summary from her hospitalization which merely recites that upon discharge she was suffering from "probable acute enteritis" and "acute anxiety neurosis."

In denying benefits, the ALJ gave substantial weight to the testimony of Dr. Boyd, an industrial consultant psychologist, that notwithstanding physical and mental impairments the claimant is still able to engage in a number of jobs. According to Dr. Boyd these jobs included cashier, clerical work, real estate and photograph sales.

On appeal claimant asserts that there is no substantial evidence which supports the vocational expert's evaluation. Claimant further asserts that the hypothetical question asked of Dr. Boyd was improper in that the ALJ failed to factually state the mental and physical impairment the vocational expert was to assume in making his evaluation. The government concedes the hypothetical question was improper but urges that the examiner was otherwise sufficiently informed to provide an answer.

The hypothetical question asked by the administrative law judge was as follows:

I want you to consider the claimant's general background, training, and education, and experience . . .. And, also I want you to consider, and also assume, that I should find that the claimant has certain physical and mental limitations that would prevent her from working again as a nurse's assistant or a nurse's aid. Or as a domestic. Or, as a babysitter for young children. Or as a receptionist. Or as a dishwasher. Do you have an opinion, based upon a reasonable medical, upon a reasonable certainty, as to what alternative employment she could engage in. . . .

Dr. Boyd answered:

Now, I do think she has very definite marketable skills which she could transfer to jobs other than the jobs she has been doing. Assuming the physical and mental limitations, these jobs would include cashiering, which, you know, it's really making change. You do greet the public to a certain extent. It doesn't require much in the way of physical stamina or strength.

I think she can function, you know, in various kinds of clerical occupations. I think that in terms of sorting coupons or sorting photographs, that type of thing. Or pricing photographs. I think she can function as a telephone solicitor. A telephone collector. Telephone sales. She's had some experience using a telephone, in the real estate business, there.

And, I think she can function, you know, in some of the service occupations. A locker room attendant. A, they determine, they watch persons, rather than watch men. I think she certainly has shown tremendous responsibility and over a long period of time. She's a throughly [sic] dependable person. These are found in stores, in business institutions and Federal buildings. These are jobs, under the assumption, that I think she could do.

On cross-examination Dr. Boyd gave the following reasons for his conclusion that claimant could perform the jobs mentioned:

[T]he reason I cited the jobs I did, was because, they're, you know, not much in the way of physical demand. A nurse's aide, you're on your feet, where you're really out chasing. A domestic, you're on your feet, as I've said. A baby-sitter, you got to be alert. A real estate salesperson, that's not very demanding. A dishwasher, again, it's demanding, you're on your feet all the time when you're washing dishes. I cited jobs I thought she had the skills, but were to be less demanding.

The ALJ found that although claimant was not capable of working as a nurse's aid she could work as a nurse's aid instructor. Mrs. Daniels is not even a licensed practical nurse. The last time she worked as a nurse's aid was over ten years ago and the evidence does not support the assumption that she has the mental or physical capacity at the present time to be engaged in such technical employment. *Cf. Johnson v. Richardson,* 486 F.2d 1023 (8th Cir. 1973). Beyond this, we find no evidence in the record to support the expert's opinion that claimant had the capacity to do the other jobs mentioned. It may be that Dr. Boyd's evaluation is correct, but we deem the record grossly inadequate to credit this testimony. There is no support for the proposition that claimant could ever function as a real es-

tate sales person or a cashier. She is not trained in real estate and has had no education to support such a finding. The evidence showed that claimant could not do even simple math.[2]

■ The basic weakness of the expert's evaluation as to claimant's capacity to do specific jobs results from the vague hypothesis and assumption the vocational expert was asked to make. He was told to assume "certain physical and mental limitations" that would prevent claimant from doing all the jobs she had performed several years before. These "limitations" were undisclosed. Furthermore, the answer of Dr. Boyd assumed that the main impairment suffered is a physical one. Dr. Boyd concluded that claimant could do sedentary work such as cashiering, telephone collecting, or real estate sales work since these do not require "physical stamina or strength." Yet claimant has never asserted any physical disability. Her whole claim is one which is related to a mental disorder. We think it

fundamental, when the ALJ uses a hypothetical question in examining the vocational expert,[3] that the ALJ relate with precision the job capacity and opportunity to the physical and mental impairment of the particular claimant.[4] Here the examiner has not even informed the expert of Mrs. Daniels' basic medical diagnosis; more importantly, he has not described how her mental impairments affect her ability to function.[5]

■ We hold that the vocational expert's testimony does not constitute substantial evidence on the record as a whole to support the ALJ's conclusion that, in light of her mental disorder, claimant is presently capable of gainful employment. *See Dressel v. Califano,* 558 F.2d 504, 508 (8th Cir. 1977).

We conclude that the ALJ has failed to develop a full and fair record and that the cause should be remanded to the Secretary for further hearing. *See Sellars v. Secretary,* 458 F.2d 984 (8th Cir. 1972). Mrs.

2. It is also difficult for this court to reconcile how an individual could not be a receptionist, as assumed by the ALJ, yet could function as a cashier.

3. Under the Federal Rules of Evidence an expert witness may testify as to his opinion in response to questions other than the traditional hypothetical question. *See* Fed.R.Evid. 702–705. However, when this occurs, it remains essential that the underlying bases for the opinion evidence reveal the factual premise which the opinion assumes to be true.

4. Detailed examples of this type of questioning, including proper and improper questions, are found in the Social Security directions to administrative law judges. *See* Social Security Administration, Bureau of Hearings and Appeals Handbook § 1–87–20 (1972). The questions utilized here are typical of the improper technique set forth.

5. An affidavit filed with the Appeals Council of the Social Security Administration after the hearing by a law clerk assisting the claimant sets forth claimant's alleged impairment in terms of her capacity to work. Unfortunately these questions were submitted to Dr. Boyd after the hearing. A portion of the clerk's affidavit proposes the following questions:

    1. Could a person whose behavior manifests inadaptability, ineptness, poor judgment, social instability, and lack of physical and emotional stamina engage in the types of

jobs you listed, i. e., cashiering, clerical work, telephone soliciting, watch person?

    2. Could a person who is chronically depressed and experiences crying spells and difficulty in sleeping be expected to engage in the types of employment you listed, i. e., cashiering, clerical work, telephone soliciting, acting as a watch person?

    3. Could a person who experiences anxiety about her interpersonal relations with others, headaches, dizziness, fatigue, low self-esteem, and temporary disorganization engage in the types of employment you listed, i. e., cashiering, clerical work, telephone soliciting, acting as a watch person?

    4. Could a person whose behavior manifests inadaptability, ineptness, poor judgment, social instability and lack of physical and emotional stamina, who is chronically depressed and experiences crying spells and difficulty in sleeping, and who experiences anxiety headaches, dizziness, fatigue, low self-esteem and temporary disorganization engage in the types of employment you listed, i. e., cashiering, clerical work, telephone soliciting, acting as a watch person?

The affidavit concludes:

    On June 1, 1976, DR. BOYD telephoned and stated that his answer to all of the questions was negative. DR. BOYD did not feel a person experiencing the difficulties listed in the question(s) could engage in the types of employment listed in the question(s).

Daniels now has competent counsel. On remand she will have an opportunity to further develop current medical testimony of her treating physicians as well as the vocational counselor's evaluation based upon her actual impairment.

The judgment is reversed and remanded to the district court with directions to remand the claim to the Secretary of Health, Education and Welfare for a further hearing.