May V. STEPHENS, Appellant,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE of the United States of America, Appellee.

No. 79–1026.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1979.

Decided July 16, 1979.

H. K. Westmoreland, Westmoreland & Westmoreland, Fort Smith, Ark., for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Joseph S. Friedman, Atty., Dept. of H. E. W., Baltimore, Md., and Larry R. McCord, U. S. Atty., Fort Smith, Ark., for appellee.

Before LAY and HEANEY, Circuit Judges, and DEVITT,* Chief Judge, United States District Court.

HEANEY, Circuit Judge.

This appeal raises the difficult question of whether May V. Stephens, a fifty-five-year-old female with an eighth grade education, who was a steady and dependable worker until she was injured in 1970, was properly denied disability insurance benefits by the Secretary of Health, Education and Welfare. The difficulty is compounded by the fact that here, as in many other similar cases, the medical testimony in the record is entirely in the form of written reports, a practice which may save the time of the doctors, the examiners and the administrative law judge but which complicates review by district and appellate courts. The difficulty is further compounded by the fact that the hypothetical questions posed to the vocational expert were so sketchy and incomplete that it is extremely difficult to give the answers to them little, if any, weight. We have no alternative but to reverse and remand for a further hearing, with the ardent hope that this time, the record will be completed in a way which will permit a final review.

Stephens was employed by McDonnell-Douglas Corporation on February 2, 1970, when she fell and sustained injury to her spine. As a result of that injury, the Workmen's Compensation Appeals Board of California awarded her a permanent disability of 35½%. Stephens attempted to return to work after her injury. Although she worked intermittently at McDonnell-Douglas, she was terminated in November, 1974, primarily because her injury prevented her from performing her assigned work.

On March 4, 1976, Stephens filed her application for disability insurance benefits. The application was denied by the Social Security Administration on June 23, 1976. The Disability Denial Notice to Stephens noted:

> We have determined that you are not entitled to disability benefits. In reaching this decision we considered how much your condition has affected your ability to work. After carefully studying your records, including the medical evidence and your statements, and considering your age, education, training, and experience, it has been determined that your condition is not disabling within the meaning of the law.

The application was reconsidered and again denied. Pursuant to Stephens' request, a hearing was held before an administrative law judge on March 10, 1977. The administrative law judge heard the testimony of Stephens and a vocational expert, as well as receiving in evidence numerous medical reports.

---

* EDWARD J. DEVITT, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

Stephens testified that she was fifty-three years old, had an eighth grade education and had worked for McDonnell-Douglas as an aircraft assembler for the last ten years. She further testified that she had worked as a welder in a shipyard, a housekeeper in a rest home and as a production line worker prior to her employment with McDonnell-Douglas. Stephens stated that she had never recovered from her back injury and complained about severe pains in her legs and lower back, shooting pains in her arms and hands, frequent headaches and breathing difficulties. She noted that she had bronchitis caused by the fumes from the solvents used in cleaning the planes and was taking a variety of medications for her problems. Stephens testified that she could not sit or stand for an extended time period, was unable to stoop or bend over and could not lift a substantial amount of weight or hold onto objects with her hands.

The medical reports substantially corroborated Stephens' testimony. Dr. Edward H. Boseker, in a report dated December 18, 1973, noted that her subjective complaints increased if she engaged in heavy lifting or repetitive bending, and concluded that Stephens "should be prophylactically precluded from [such] heavy lifting and repetitive bending." He estimated that Stephens had a 10% loss of motion in the lumbar spine. Dr. John S. Woodward examined Stephens on May 7, 1976. In his report, dated May 21, 1976, he noted that Stephens suffered from a generalized spinal immobility which he diagnosed as spinal arthritis with shoulder girdle myositis. His prognosis was poor for substantial improvement. Dr. Woodward concluded that she could not stand or walk for over six hours, occasionally lift or carry more than twenty pounds, or frequently lift or carry more than ten pounds. Considering these limitations, he reasoned that Stephens should avoid any strenuous activities.

Stephens was examined on October 27, 1976, by Dr. Martin E. Offenberger. His examination revealed a limited range of motion at the waist, coupled with moderately severe tenderness. Dr. Offenberger noted that the joints on Stephens' hands and wrists were painful and stiff, had a limited range of motion and were subject to frequent locking. Grip strength was very weak with mild deformities noted in the joints of all the fingers. Dr. Offenberger's diagnosis was: (1) chronic myofaschial ligamentous sprain and strain of joints of the fingers with chronic inflammatory changes of the joints, (2) chronic myofaschial ligamentous sprain and strain of the joints of the wrists and elbows of both upper extremities, (3) chronic myofaschial sprain and strain of the joints of the feet, toes, ankles and knees of both lower extremities, (4) chronic thoracic sprain, (5) chronic lumbar sprain, (6) chronic bronchitis, (7) chronic costochondritis, bilateral, secondary to bronchitis, (8) post-traumatic anxiety neurosis. He felt claimant's impairments precluded her from any type of work for which she had had any type of experience and training. He also indicated that she was 100% disabled and that her condition was permanent and stationary.

Stephens was examined on October 27, 1976, by Dr. Reubin Merliss. He felt that her lung disease was sufficient to permanently preclude her from heavy work or working in atmospheres containing pollutants. A report from Dr. Hassan M. Masri, dated July 19, 1977, concluded that Stephens had chronic bronchitis and osteoarthritis.

These medical reports, when considered as a whole, indicate without contradiction that Stephens was unable to return to her former job and conclusively support the finding that she was unable to do any work which subjected her to the type of air pollutants which would aggravate her bronchial condition, work which required her to do constant bending, twisting or occasional lifting in excess of twenty pounds, or frequent lifting in excess of ten pounds. They also show that she was unable to do any work which required significant finger dexterity because of the swelling and degeneration in the joints in her hands.

The administrative law judge, however, concluded that although Stephens had some

impairment, it had not reached the severity necessary to constitute total disability under the Social Security Act. He did so primarily on the ground that the vocational expert testified that she was capable of such sedentary jobs as light bench assembly, inspection and packaging. His opinion stated in part:

> After carefully weighing all the medical evidence and claimant's testimony at her hearing, the Administrative Law Judge concludes that claimant's osteoarthritis and the pain she suffers therefrom is not so severe as to preclude her from performing all substantial gainful activity. The Administrative Law Judge does not wish to minimize the pain and discomfort claimant may experience with her osteoarthritis. However, the evidence of record does not reflect that claimant's impairments, singly or in combination are of such severity as to preclude her from engaging in those sedentary jobs which * * * the vocational expert, testified her transferable skills would allow her to perform.

The vocational expert had given the following testimony at the hearing:

> Q. [The administrative law judge] Have you had an opportunity to study the evidence of record in addition to hearing the testimony at this hearing?
>
> A. [The vocational expert] Yes, sir, I have.
>
> Q. Doctor, I'm going to ask you some hypothetical questions, and I request that you consider the Claimant's age, education, training and work history along with any transferability of skills. If she is capable of any type at the present time, are these jobs available in her locality or in the alternative, in the national economy and in significant numbers. Now the first hypothetical, I want you to assume that all the allegations of the Claimant are true. In the second hypothetical, consider that the Claimant can do light or sedentary work with such limitations as are noted in the record. Do you have any questions?

> A. No sir, I don't. With regard to the first hypothetical, namely that all of her symptoms are, in fact, credible, it would appear that she would be unemployable due to the following reasons: her pains, lack of strength she indicate [sic] in her hands, the fact that she is unable to hold onto things or anything as she indicated would preclude most of the sedentary bench assembly jobs that she would have the sills [sic] to do coupled with her back pains, headaches, shortness of breath and other things that she described, and, of course, the necessity that she indicated of having to lie down at least three times each day. This, of course, would preclude working in the competitive labor market in all jobs. With regard to your second hypothetical, in other words, assuming that she could do light or sedentary jobs, what skills would she have in doing those jobs or which jobs are available. In view of her background, particularly in the area of assembly, aircraft assembly and inspection, the work that she did for some 15 years, the work she did was primarily rather arduous and working on DC–10's riveting, working on the wings, and so forth, but in terms of sedentary bench assembly, there are inspection assembly, counting, sorting, labeling, packaging jobs in a wide variety of industries. I'm thinking of the plastics industry. Materiod Company, for instance, employs a wide number of women to assembly [sic] small plastic parts. The Centron Company is assembling cassette tapes in this area. McGraw Laboratories employs some 250 women who assembly [sic]—sit at a bench and assembly [sic] hospital supplies like IV tubing. Toy companies, Elvin Toys, Marine Technology, marine parts, Irvine Company, the electronics, all of these companies do employ large numbers of men and women who work at a bench and assembly [sic] various components and parts in these industries. These are considered sedentary job [sic], semi-sedentary which require her to stand on occasion. These would be the kinds of skills that she would have in view of her previous experience, particu-

larly in the aircraft industry. I wouldn't consider her rest home experience as having any transferability of skills to light or sedentary work, and her welding, of course, is also quite heavy, and she would have to have additional training to be a helioarc welding [sic] which is very light welding at which she could work at a bench, but she couldn't do it at this point.

The Appeals Council affirmed the decision of the administrative law judge on December 9, 1977. On February 6, 1978, Stephens filed a complaint in the District Court for review of the administrative determination. When the matter was presented to the court, Stephens submitted a medical report from Dr. Earl M. Woodson, dated February 14, 1978. In that report, Dr. Woodson stated that Stephens suffered primarily from chronic bronchitis, emphysema, osteoarthritis of the lumbar spine, arthritis of the right and left shoulder and hypertension. He concluded that, in light of her physical condition and her limited background, she was unable to engage in any type of gainful employment. The District Court remanded the action to the Secretary of Health, Education and Welfare to consider the new medical evidence on February 27, 1978.

The matter was assigned to a new administrative law judge who conducted a hearing on May 17, 1978. The only witness at the hearing was Stephens whose testimony was essentially the same as at the first hearing. In addition to considering the record made at the first hearing, the administrative law judge also accepted three additional medical reports.

The first was Dr. Woodson's report. The second was a report from Dr. H. E. Jones, dated May 16, 1978. Dr. Jones found that Stephens suffered from osteoporosis of the spine, bronchial asthma, pulmonary emphysema and osteoarthritis. He concluded that Stephens was unable to gainfully compete in the labor market and was totally and permanently disabled. The third report, dated May 31, 1978, was from Dr. William Sherrill. Dr. Sherrill concluded that Stephens had a lumbosacral pain syndrome

with aggravation by posture and obesity, but made no conclusions as to whether Stephens was disabled. There is no indication that he examined her for her bronchial condition or the degeneration in the joints of her hands, or that he had the other medical reports exploring these conditions in his possession. Instead, he concentrated his examination on her back.

The second administrative law judge also found that Stephens was not totally disabled within the meaning of the Social Security Act. He concluded that:

[a]lthough the claimant does no doubt encounter some pain and physical ailments as the testimony shows, such impairments do not reach the level of severity so as to prevent the claimant from engaging in work for which the claimant is obviously qualified, and has performed in the past. The claimant's allegation of pain and discomfort has been considered and evaluated because pain may be a disabling affliction. However, based on the evidence contained in this record, it is reasonable to conclude and find that the claimant's subjective complaints of pain fail to overcome the massive current negative medical findings.

On the basis of the present record, the claimant has not furnished the Secretary with sufficient probative evidence of the existence of a disability, nor has the claimant supported this claim for disability insurance benefits with sufficient evidence to support a finding that the anatomical, physiological or psychological abnormalities are demonstrable by medically acceptable clinical and laboratory diagnostic techniques of such a level of severity as to preclude engagement in substantial gainful work activity. On the basis of the evidence now of record, it is reasonable to conclude and find that the claimant has the residual functional capacity to perform many of the jobs previously performed. Thus, it is clear that the claimant has not successfully met the statutory test for determining "disability".

The decision of the administrative law judge was affirmed by the Appeals Council. Stephens then brought a second action in the District Court. The District Court determined that substantial evidence on the record as a whole supported the decision of the administrative law judge and granted the Secretary's motion for summary judgment.

Our function when reviewing a disability insurance decision is to determine whether or not it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). For purposes of the Social Security Act, substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). *See also Alexander v. Weinberger*, 536 F.2d 779 (8th Cir. 1976); *Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir. 1975); *Yawitz v. Weinberger*, 498 F.2d 956 (8th Cir. 1974).

■ A claimant has the burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1)(A). To satisfy the statutory definition of disability, the claimant must show: (1) that there is a medically determinable impairment which has lasted or is expected to last twelve months; (2) that there is an inability to engage in any substantial gainful activity; and (3) that the inability is by reason of the impairment. *Yawitz v. Weinberger, supra* at 959; *Brinker v. Weinberger*, 522 F.2d 13, 17 (8th Cir. 1975); *Timmerman v. Weinberger, supra* at 442. When a claimant has demonstrated a medically determinable disability is so severe as to preclude him from performing his former work, however, the burden shifts and the Secretary must prove there is some other type of substantial gainful employment the claimant can perform. *Boyer v. Califano, Jr., Secretary of Health, Education and Welfare*, 598 F.2d 1117 at 1118 (8th Cir. 1979); *Brinker v. Weinberger, supra* at 17; *Timmerman v. Weinberger, supra* at 443.

■ It is uncontradicted that Stephens was precluded from performing her former work at McDonnell-Douglas; thus, the burden shifted to the Secretary to establish by a preponderance of the evidence that there was work available in the national economy that Stephens could perform in her disabled condition.

■ The only evidence in the record to support the administrative law judge's finding that Stephens could, in fact, engage in substantial gainful activity is the testimony of the vocational expert. Based on the hypothetical question, he found that Stephens was capable of substantial gainful activity. We conclude, however, that the vocational expert's testimony was fatally deficient in that the hypothetical question failed to precisely set out all of Stephens' impairments. *See Behnen v. Califano*, 588 F.2d 252, 255 (8th Cir. 1978); *Lewis v. Califano*, 574 F.2d 452, 456 (8th Cir. 1978); *Daniels v. Mathews*, 567 F.2d 845, 848 (8th Cir. 1977).

In *Daniels v. Mathews, supra* at 848, this Court held:

> We think it fundamental, when the ALJ [administrative law judge] uses a hypothetical question in examining the vocational expert, that the ALJ relate with precision the job capacity and opportunity to the physical and mental impairment of the particular claimant. [Footnotes omitted.]

The administrative law judge failed to do so here. In the hypothetical question, he asked the expert to assume that Stephens could do "light or sedentary work with such limitations as are noted in the record." The exact nature of these "limitations" was undisclosed and, thus, we have no way of determining whether the vocational expert recognized all of Stephens' disabilities. At a minimum, the hypothetical question should have included a reference to Stephens' osteoarthritis, bronchial condition, limitations on her ability to bend, stoop, sit or stand for prolonged periods, the degenerative condition of her hands and her constant pain. We simply are unprepared to assume that the vocational expert had all of

these conditions in mind when he gave his answer. Unless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a vocational expert will be unable to accurately assess whether jobs do exist for the claimant.

While there is some justification for reversing outright,[1] we follow the lead of those cases that have previously dealt with the problem of a deficient hypothetical question and remand the case for a further hearing. *See, e. g., Behnen v. Califano, supra* at 255; *Lewis v. Califano, supra* at 456.

The judgment is reversed and remanded to the District Court with direction to remand the claim to the Secretary of Health, Education and Welfare for further hearing.

LAY, Circuit Judge, dissenting.

I respectfully dissent.

The record clearly supports an award for the claimant. I fail to see the necessity of another remand.

---

1. We have grave doubts whether there is substantial evidence in the record as a whole that could support a finding that Stephens is not totally disabled within the meaning of the Social Security Act.