**Alfred P. GILLIAM, Appellant,**

v.

**Joseph A. CALIFANO, Secretary, Health, Education & Welfare of the United States or successor or successors in office, Appellee.**

**No. 79–1525.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 6, 1979.

Decided May 15, 1980.

Robert A. Crowe, St. Louis, Mo., for appellant.

Anne Travis Shapleigh (argued), Asst. U. S. Atty., St. Louis, Mo., for appellee; Rob-

ert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief.

Before GIBSON, Chief Judge,* and LAY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellant Alfred P. Gilliam appeals from the judgment of the district court granting the motion of the Secretary of HEW for summary judgment on his petition for review of a final decision of the Secretary denying him disability insurance benefits. For the reasons discussed below, we find that there was not sufficient evidence to support the decisions of the administrative law judge (ALJ) and the district court. We reverse and remand.

Gilliam became self-employed in 1962. In February of 1977, a fire burned down his storm window business. In August of 1977, Gilliam's personal physician, Dr. Appleberry, hospitalized him for testing and determined that he was unable to work because of severe osteoarthritis of the spine and multiple joints, asthma, chronic bronchitis and diabetes mellitus. Gilliam had been trying to reestablish his business, but on advice from Dr. Appleberry he gave up the attempt. Gilliam has not worked since that time. Dr. Appleberry confirmed in writing his conclusion that Gilliam was disabled, in April of 1978.

Dr. Huckstep examined Gilliam at the request of the Missouri Vocational Rehabilitation Agency. In a report of October 13, 1977, Dr. Huckstep found some indications of arthritis and the other conditions, but noted that Gilliam's reactions to pain may have been exaggerated. Dr. Huckstep did not take any X-rays of Gilliam's joints or back.

On February 20, 1978, Dr. Conrad, an orthopedic surgeon, examined Gilliam at the request of the state. Dr. Conrad did an extensive examination, including X-rays of the joints and back. Dr. Conrad detailed problems of limited motion, arthritic spurring and narrowing of the disc spaces; but,

like Dr. Huckstep, he thought that Gilliam's complaints were out of proportion to his condition.

The final piece of medical evidence was a check list dated October 2, 1977, captioned "residual functional capacity—physical." It indicated that Gilliam suffered very few physical restrictions. The signature was illegible. This form is typically filled out by a medical examiner, however, who never examines the claimant but merely reviews the written data available at the time.

Gilliam applied for disability benefits on September 8, 1977. His application was denied by the Social Security Administration initially on November 6, 1977, and affirmed in a reconsideration determination dated March 10, 1978. Appellant requested a hearing, which was held on May 10, 1978. Gilliam, his attorney and the vocational expert were present. All the written medical reports were made available to the ALJ.

At the time of the hearing, Gilliam was fifty-five years old and had a seventh grade education. His other work experience, after his discharge from the military in 1945, had been as a carpenter and a drilling operator in underground mining. He testified in detail about his physical condition and his inability to perform simple daily activities, such as: writing, opening jars or bottles, getting in and out of the bathtub, tying his shoes, putting on his shirt, and turning on and off a light switch. In general, he stated that he was unable to sit or stand for over one-half hour, could not walk 150 feet without stopping to rest, found it difficult to bend down, and had to lie down four or five hours a day because of the pain.

At the request of the ALJ, the vocational expert defined the terms "light work" and "sedentary work" as used in the Dictionary of Occupational Title published by the Department of Labor. The ALJ then asked the following question:

Under the assumption, should the medical evidence disclose that there's no physical or mental impairment to Mr. Gilliam

* The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted and took senior status on December 31, 1979, before the opinion was filed.

doing . . . [inaudible reference to light and sedentary jobs]. Bearing in mind the definitions that you've just given, for those jobs, do you know of any jobs which exist in significant numbers in the region in which he resides, that you feel this claimant is able to perform, based on his age, education, and his training, background.

In response to this question, the vocational expert cited a number of simple assembly jobs, leather boot and shoe industry jobs and machine tending jobs.

Gilliam's counsel then asked the vocational expert to assume that Gilliam has a degree of impairment of his upper extremities such that he cannot put on a shirt without assistance, that Gilliam has such limitations of motion that he cannot tie his own shoes, that Gilliam's hands are so stiff and sore that he often cannot operate a common light switch, that Gilliam cannot walk a distance greater than 150 feet without resting several minutes, and that Gilliam is required to spend four or five hours a day lying down because of pain. The vocational expert stated that Gilliam could not work with those limitations.

The ALJ decided that Gilliam had been properly denied disability benefits. The Appeals Council approved the decision of the ALJ on October 2, 1978, which became the final decision of the Secretary. Thereafter Gilliam sought judicial review. The district court upheld the decision denying disability benefits and this appeal followed. For reversal, Gilliam argues that the Secretary's decision was not supported by substantial evidence.

We must uphold the Secretary's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *e. g.*, *Hancock v. Secretary of HEW*, 603 F.2d 739 (8th Cir. 1979).

■ In order to be eligible for disability insurance benefits, an individual must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The claimant has the burden of establishing that such a condition exists. *Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir. 1975). When a claimant has established that a disability precludes him from performing his former work, however, the burden shifts to the Secretary to prove that there is some other type of substantial gainful employment that the claimant can perform. *Boyer v. Califano*, 598 F.2d 1117, 1118 (8th Cir. 1979).

■ Gilliam's work as a storm window and door manufacturer had required a large amount of physical activity, including the ability to bend, stoop, reach, handle things, carry, push and pull. In addition, he had to have the ability to operate, communicate, plan and organize. The only medical evidence which even suggests that he would be able to resume such activities was the "residual functional capacity—physical" check list. Although such forms are admissible, they are entitled to little weight in the evaluation of disability. *Landess v. Weinberger*, 490 F.2d 1187 (8th Cir. 1974). The form does not constitute "substantial evidence" upon the record as a whole.

■ The ALJ correctly concluded that Gilliam could not perform his former job. Thus, the burden shifted to the Secretary to establish by a preponderance of the evidence that there was work available in the national economy that Gilliam could perform in his disabled condition. The only evidence in the record to support the ALJ's finding that Gilliam could engage in substantial gainful activity is the testimony of the vocational expert. Based on the ALJ's hypothetical question, he stated that Gilliam was capable of several types of jobs. We conclude that the vocational expert's testimony was fatally deficient because the hypothetical question failed precisely to set

out all the claimant's impairments. *Behnen v. Califano,* 588 F.2d 252 (8th Cir. 1978); *Lewis v. Califano,* 574 F.2d 452 (8th Cir. 1978); *Daniels v. Matthews,* 567 F.2d 845 (8th Cir. 1977). Specifically, the hypothetical question posed here was almost identical to one recently criticized by this court, which asked the vocational expert to assume that the claimant could do "light or sedentary work with such limitations as are noted in the record."[1] *Stephens v. Secretary of HEW,* 603 F.2d 36, 41 (8th Cir. 1979). The fatal defect in such a hypothetical question is well illustrated here by the discrepancy between the vocational expert's answer to the ALJ's hypothetical question and his answer to the hypothetical question by Gilliam's counsel. When Gilliam's counsel posed a hypothetical question setting out in detail the functional restrictions reported by Gilliam, the vocational expert readily answered that it would be impossible for Gilliam to hold any kind of job. The vocational expert's answers to the ALJ's hypothetical questions were deficient and did not constitute substantial evidence on which the Secretary could base a denial of benefits.

Accordingly, the judgment is reversed and remanded to the district court with directions to remand the claim to the Secretary for further hearing.

---

1. The Secretary argues that the only defect in *Stephens* was that there the ALJ placed the burden on the vocational expert of determining the claimant's limitations, but that here the ALJ himself made the finding that Gilliam was able to do light or sedentary work. However, such a hypothetical not only begs the question, it also ignores the whole purpose of vocational expert testimony, which is to assess whether jobs exist for a person with the claimant's precise disabilities.