**Michael F. TATE, Plaintiff,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant.**

**Civ. A. No. 80–2176.**

United States District Court,
E.D. New York.

Oct. 26, 1982.

Binder & Binder, Hauppauge, N.Y., for plaintiff; Charles E. Binder, Hauppauge, N.Y., of counsel.

Raymond J. Dearie, U. S. Atty., E.D.N.Y., Brooklyn, N.Y., for defendant; Ben Wiles, Asst. U.S. Atty., Brooklyn, N.Y., of counsel.

BARTELS, District Judge.

Plaintiff Michael Tate appeals the final determination of the Secretary of Health and Human Services (the "Secretary") which denied his application for a period of disability insurance benefits.

This is the second time the District Court has considered this case. On March 16, 1981, after the Secretary had initially denied plaintiff's application, the Court ordered remand for further administrative action. The Court indicated its dissatisfaction, under the circumstances, with the Secretary's reliance on 20 C.F.R. subpart B, Appendix II, Table I and ordered the Secretary to produce vocational testimony to indicate "what jobs, if any, are available to the plaintiff considering his age, his illiteracy, his work background and his physical impairments." At a supplemental hearing, during which a vocational expert testified, the Administrative Law Judge ("ALJ") found that the plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council adopted the ALJ's decision on September 29, 1981 in a decision denying plaintiff's claims.

## FACTS

Plaintiff is a 41-year old, former factory worker whose work experience has been limited to unskilled jobs, particularly to work involving asbestos. He apparently completed the ninth grade but is functionally illiterate, and according to psychological testing, has an I.Q. of 87. He is suffering from asbestosis, traced to his lung exposure to asbestos for 15 years.

The medical evidence included at the administrative level can be summarized as follows: In 1979 plaintiff's treating physician, Dr. Reza, indicated that plaintiff should not perform work in a clutch factory, for which he was trained, due to his asbestosis. Dr. Reza indicated that Tate was capable of secretarial work but that rehabilitation training would be unsuccessful due to Tate's inability to follow directions and his inability to read. He assessed plaintiff's capacity to include sitting and standing for eight hours but concluded, nevertheless, that because of Tate's intellectual impairment, he was disabled.

Dr. Didio, a clinical psychologist, evaluated plaintiff on March 23, 1981. He reported plaintiff to have an I.Q. of 87, evidence of a learning disability and an organic basis for his poor intellectual functioning. He also noted that plaintiff was illiterate, had marginal hygiene practices and was overweight but that he was well-oriented with an intact memory and unimpaired insight. Dr. Didio opined that in light of the difficulty involved in remedial training for plaintiff and the severity of his physical impairment, plaintiff was .disabled. His diagnosis was: "life circumstance problem—physical disability and intellectual limitation."

On June 9, 1981 Dr. Stephen Goldman, a Board certified specialist in internal medicine and pulmonary diseases, noted plaintiff's lung condition and his obesity. He assessed plaintiff's capabilities to include sitting for five hours, standing for one hour, lifting twenty pounds occasionally and up to ten pounds frequently, grasping, pushing and pulling, fine manipulation and use of his legs with levers. He indicated that Tate should not walk at all.

Assistant Professor Dr. Susan Daum, summarizing the findings of the Occupational Medicine Clinic at Mt. Sinai Hospital, in a letter dated May 3, 1979, diagnosed Tate's condition as pulmonary asbestosis with borderline pulmonary function. She noted that Tate suffered from a continuous cough, unrelieved by his ceasing to be exposed to asbestos. She instructed Tate to have no further occupational or *non-occupational* exposure to dust, fumes or pollution of any sort, including that encountered in traffic. Dr. Daum also noted that a long-standing pulmonary infection had left Tate with a residual chronic bronchitis which is a hypersecretion of the mucous glands of the lungs. Because of his physical condition and his intellectual and emotional difficulties, she found him to be totally disabled for any type of work.

Arthur Bierman, a vocational expert, testified at the supplementary hearing. He

responded to various hypotheticals posed by the ALJ and Tate's counsel. In summary, Bierman concluded that assuming an individual with Tate's respiratory problems could "sit 8 hours, stand 8 hours"—as Dr. Reza's report of 1979 indicated—then that individual could be employed in the food, pharmaceutical or health areas. He added the caveat, though, that if—as Dr. Daum indicated—that individual had to stay away from automobile emissions, he could not get to work, and if that individual could sit only five hours a day—as Dr. Goldman's report of 1981 indicated—he would be precluded from any job. Moreover, an individual with the limited intellectual capacity of Tate would be a marginal worker in any circumstance:

> [He] would be the last considered as a viable worker for obvious reasons; he has an intellectual deficit which is severe, and moderate to severe, and this is on an organic basis, and of course, he's limited to the extent of being illiterate. And my visitation of most factories, and placing people in factories, is that they do hire people such as this, but they are the least desirable, the last and only in conditions of labor shortages and/or special arrangements. I don't think that he would be given first crack in any competitive situation.

The ALJ found that Tate has asbestosis and that he could not return to his previous job but that Tate still had the "residual functional capacity" to perform sedentary work. He concluded that Tate could "sit and sit (sic) for 8 hours in each position, walk 1 block, climb 1 flight of stairs, lift and carry 50 pounds but [is] unable to bend and kneel." Moreover, he found that Tate's inability to walk was a result of his "mild pulmonary impairment and obesity which has not lasted or (sic) can be expected to last for 12 months." Accordingly, the ALJ found Tate was not under a disability as defined by the Social Security Act.

■ The burden of proving disability is on the claimant, 42 U.S.C. § 423(d)(5); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). When the claimant has established that his impairment prevents him from returning to his previous employment, though, the burden shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant can realistically perform, considering his capabilities and impairments. *Aubeuf v. Schweiker*, 649 F.2d 107 (2d Cir.1981); *Parker v. Harris*, 626 F.2d at 231. Since the ALJ found that Tate is unable to return to his former employment, the burden shifted to the Secretary to produce evidence of alternative employment which Tate could perform.

■ The Court realizes that the factual determinations of the Secretary are conclusive unless they are unsupported by substantial evidence or are based on legal error. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Here the administrative decision contains several critical flaws:

(1) Based upon Dr. Goldman's report, the ALJ found that Tate was unable to walk. If that incapacity were permanent, Tate, apparently, would be disabled. The ALJ skirted this conclusion, though, by deciding that Tate's inability to walk "is a result of his mild pulmonary impairment and obesity which has not lasted or (sic) can be expected to last for 12 months." Basic common sense dictates that expert medical opinion is beyond the competence of an administrative law judge. *Aubeuf v. Schweiker*, 649 F.2d 107. Yet in the record there is no medical support at all for the ALJ's conclusion. Since the ALJ's conclusions must be supported by substantial evidence, this unsupported material determination, in and of itself, would warrant remand of this action.

(2) Several other statements by the ALJ are confusing and should be clarified. For example, on page 9 of the decision, the ALJ states, inexplicably, both that Tate could

not sustain work activity from June 9, 1981 on, and that from May, 1979 on he could perform "medium" work; and on page 12 the ALJ states that Tate can "sit and sit" for eight hours.

(3) At the supplementary hearing the ALJ called a vocational expert who was asked hypothetical questions designed to establish whether Tate retained the capacity to perform any alternative employment. A vocational expert's testimony is only useful if it addresses whether the particular claimant, with his impairments and capabilities, can realistically perform a particular job. *See Aubeuf,* 649 F.2d at 197; *Parker,* 626 F.2d 225; *Gilliam v. Califano,* 620 F.2d 691 (8th Cir.1980). The only hypothetical establishing Tate's lack of disability was one based on a "Physical Capacities Evaluation" form filled out by Dr. Reza, two years prior, which reported that Tate could sit and stand for eight hours. That hypothetical was fatally defective in not adequately addressing Tate's emotional and intellectual deficits. Moreover, given the chronic nature of Tate's condition, the indications of his physical deterioration, his insured status which lasted until June 30, 1981 and the more recent findings of Dr. Goldman, a specialist in the field of pulmonary medicine, that Tate could only stand and sit for a total of six hours, it is disturbing that neither the ALJ nor the Appeals Council attempted to obtain an update from Dr. Reza. *See Bastien v. Califano,* 572 F.2d 908 (2d Cir.1978) (subsequent development of disability due to progressive arthritis); *see also Alvarado v. Weinberger,* 511 F.2d 1046 (1st Cir.1975) (greater weight should be accorded the opinion of a physician specializing in the field of plaintiff's impairment than that of a nonspecializing physician). Rather, they summarily dismissed a mountain of medical evidence contrary to Dr. Reza's findings and blithely assumed that if Tate's condition had changed, Dr. Reza would have filled out another form.

Based on the foregoing, the Court finds that the Secretary's decision is not supported by substantial evidence and that the Secretary did not meet his burden of proof in showing that Tate is able to perform substantial gainful employment which exists in the national economy. It is hereby

ORDERED that this action be and hereby is remanded to the Secretary for the taking of additional evidence as necessary and for findings consistent with this opinion. The Court notes that Tate has submitted results of extensive vocational testing which show his actual performance at simple assembly-type tasks which the vocational expert had indicated might be within his capabilities. Under the circumstances, this type of testing is particularly relevant, and the Secretary should consider it as well as any other pertinent data.