992 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Curtis H. GRAY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-3561.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1993.
 
 Before KEITH and BATCHELDER, Circuit Judges, and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 In this case we are asked to review the district court's order approving the Secretary's denial of disability benefits to plaintiff-appellant Curtis Gray. Finding no error, we affirm.
 
 
 2
 * In 1978, plaintiff-appellant Curtis Gray ruptured a disc in his back and had reparative back surgery. Gray returned to work after surgery but re-injured his back in 1980. In 1981, at age 48, Gray applied for disability benefits asserting disability since the injury in 1980. Gray's application was denied at the administrative levels and was then reviewed by ALJ Brown.
 
 
 3
 After a hearing, ALJ Brown issued a written opinion. ALJ Brown found first that Gray could no longer perform his past employment which Brown classified as "medium" to "heavy" work. ALJ Brown then considered the medical evidence and concluded that Gray could perform sedentary work:
 
 
 4
 Based on a review of the medical evidence, the arguments of counsel, and an assessment of claimant's credibility, the Administrative Law Judge is of the opinion that claimant is capable of sustained sitting, occasional standing and walking and lifting of weights of up to 10 pounds. Thus, he has the residual functional capacity for at least a wide range of sedentary work.
 
 
 5
 In the "Findings" section of his opinion, ALJ Brown wrote, "The claimant has the residual functional capacity to perform at least a wide range of sedentary work." Because Gray was under 50 at the time of his application, his ability to perform sedentary work rendered him ineligible for disability benefits and Brown denied his claim.
 
 
 6
 In 1989, Gray filed a new claim for disability benefits claiming disability since 1980.[1] Gray's claim was denied initially and again upon reconsideration, and Gray was granted a hearing before ALJ Spidel.
 
 
 7
 After considering extensive medical evidence and testimony of a vocational expert, ALJ Spidel concluded that Gray was not disabled under the standard applied to those over age 50. Spidel wrote,
 
 
 8
 Administrative Law Judge Mark Brown issued an opinion on September 22, 1982, in which he opined that the claimant was capable of, at least, a wide range of sedentary work.... Since that time, considerable additional evidence has been submitted, including physical evaluations from several physicians who have indicated that the claimant would be capable of far more than sedentary work.
 
 
 9
 Spidel concluded that Gray had an exertional capacity for some types of light work which, under the "grid," meant that Gray did not classify as disabled. Therefore, Spidel ruled that Gray was ineligible for disability benefits.
 
 
 10
 Gray filed an action in district court challenging Spidel's ruling, and the case was referred to a magistrate judge. Magistrate Judge Merz decided that ALJ Brown had found that Gray's abilities were limited to sedentary work. With that determination made, Merz recommended the Secretary's decision be reversed on grounds that ALJ Brown's finding (limiting Gray to sedentary work) was binding on ALJ Spidel, and therefore, Spidel's decision was not supported by substantial evidence. The Secretary submitted objections to the recommended disposition, but Merz's view remained unchanged.
 
 
 11
 District Judge Rice rejected the Magistrate Judge's recommendation. Judge Rice found that ALJ Brown had not intended to find Gray limited to sedentary work. Judge Rice noted that Brown needed only to find that Gray could perform sedentary work in order for Gray to be ineligible, so Brown had no need to even consider whether Gray could perform at the higher "light work" standard. Judge Rice then found ALJ Spidel's decision supported by substantial evidence and affirmed. This appeal followed.
 
 II
 A. Collateral Estoppel (Issue Preclusion)
 
 12
 Gray argues that the finding of ALJ Brown in 1982 precluded ALJ Spidel from issuing a contrary finding in 1990. He asserts that while the language Brown used could be interpreted as a decision that Gray could do at least sedentary work, a careful reading indicates a finding that he could do only sedentary work. Gray gives two supporting reasons. First, the description of work that Gray can do, parallels the definition of sedentary work.[2] Second, Brown used the "sedentary" category on the grid to determine that Gray was not disabled.
 
 
 13
 The Secretary counters that we should note, first of all, that in order for Gray to be ineligible for disability, Brown simply had to find that Gray could perform sedentary work; it was entirely unnecessary for Brown to determine what level of work greater than sedentary work Gray could perform. As the district court noted in rejecting the magistrate judge's recommendation, "once Judge Brown concluded that Gray could perform at least sedentary work, he had no reason to make any further determination regarding Gray's residual functional capacity." In light of this fact, Brown's two references to Gray's work capacity as "at least" sedentary work meant only that Gray could perform somewhere in excess of the standard below which a finding of disabled would be permitted. Furthermore, Brown expressly accorded greater weight to the opinion of a certain doctor who had found that Gray could perform "light work." This leads one to conclude that Brown did not decide that Gray was limited to sedentary work.
 
 
 14
 We agree with the Secretary's position. ALJ Brown's decision was simply a determination that Gray could perform work in the lowest exertional category, making Gray therefore ineligible for benefits. Brown's use of the language defining sedentary work was simply for the purpose of justifying his decision that Gray was ineligible for benefits. Brown did this through proof that Gray could perform sedentary work.
 
 
 15
 This, of course, quickly disposes of Gray's issue preclusion argument and makes further discussion of it unnecessary, for if ALJ Brown never found Gray limited to sedentary work, the issue before ALJ Spidel (i.e., whether Gray could perform light work) had not been resolved. Without an earlier resolution of an issue, there can be no issue preclusion.
 
 B. Substantial Evidence
 
 16
 Gray also argues that ALJ Spidel's finding lacks the support of substantial evidence, and this for two reasons: failure to give the opinion of Dr. Villarreal sufficient weight and an alleged error in Spidel's questioning of the vocational expert. This argument must be rejected.
 
 
 17
 Gray contends that ALJ Spidel should have given the opinion of Dr. Villarreal greater weight. Dr. Villarreal examined Gray and it was his opinion that Gray's physical condition was disabling. As a treating physician, Dr. Villarreal's opinion was entitled to greater weight than that of a non-treating physician, other things being equal. See Lashley v. Secretary of Health and Human Servs., 708 F.2d 1048, 1054 (6th Cir.1983). Here, however, several factors supported Spidel's rejection of Villarreal's opinion. One, Villarreal's opinion was a conclusion regarding Gray's vocational ability, an area in which Villarreal had no expertise. Two, several other doctors examined Gray and each concluded that Gray's physical condition would permit him to perform the general requirements of light work. Three, according to ALJ Spidel, Gray's own testimony lacked credibility as to the extent of his disability. Four, Villarreal's opinion was discredited for several other reasons, each enumerated in Spidel's report. So, even if Villarreal's testimony deserved special weight initially, Spidel had every right to reject it in light of the other evidence.
 
 
 18
 Gray also argues that the hypothetical question posed to the vocational expert by ALJ Spidel improperly assumed certain facts. Spidel asked the vocational expert,
 
 
 19
 [A]ssum[ing] that the claimant were limited to light work activity, which would permit him to alternate sitting and standing, again not require repetitive forward bending for more than half the workday and would require no stooping, are there entry-level unskilled jobs which one could perform within those parameters?
 
 
 20
 Gray contends that this question assumed facts that were not supported by the medical evidence.
 
 
 21
 This contention merely illustrates that Gray and ALJ Spidel disagreed on what the facts showed. Spidel concluded that the evidence indicated Gray could and could not do particular things, and Spidel incorporated those findings into his hypothetical question to the vocational expert, so the question was properly grounded on Gray's abilities as Spidel found them. The fact that Gray would have found the facts differently does not mean that Spidel's hypothetical question was fatally flawed.
 
 
 22
 As legal support for his argument, Gray cites Gilliam v. Califano, 620 F.2d 691 (8th Cir.1980). In Gilliam, the court reversed and remanded the denial of benefits because the ALJ's question to the vocational expert failed to describe the claimant's impairments. The ALJ asked the expert if, assuming the claimant could do sedentary and light work, there were any jobs available within those categories. This question is, of course, entirely unhelpful because it is tantamount to asking if there are any jobs available in light or sedentary work. The court held that the ALJ must specify the disabilities and then ask if there is work for the claimant to perform.
 
 
 23
 The instant case does not suffer the error in Gilliam. Here, Spidel did what the ALJ in Gilliam did not do: Spidel noted the limitations of Gray and asked the vocational expert if there were any jobs Gray could perform. Perhaps Spidel could be criticized for using the words "light work" as somewhat question begging, but this mistake, if it even was one, does not warrant reversal, nor does it indicate a lack of substantial evidence.
 
 III
 
 24
 We find all of Gray's arguments unpersuasive and, accordingly, we AFFIRM the district court.
 
 
 
 *
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Under the regulations, Gray's eligibility status did not change until 1983 (when he turned 50) so he cannot claim benefits for any period before 1983. Before this court, Gray only argues entitlement to benefits since 1983
 
 
 [2]
 Gray is correct on this point. The regulations define sedentary work:
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is also necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 [20]
 C.F.R. § 404.1567