Wayne L. TENNANT, Appellant,

v.

Richard SCHWEIKER, Secretary of
Health and Human
Services, Appellee.

No. 81–2172.

United States Court of Appeals,
Eighth Circuit.

Submitted May 19, 1982.
Decided June 30, 1982.

Thomas A. Wagoner, Grand Island, Neb., for appellant.

Ronald D. Lahners, U. S. Atty., D. Nebraska, Omaha, Neb., and Sally R. Johnson, Asst. U. S. Atty., Lincoln, Neb., for appellee.

Before HEANEY and HENLEY,* Circuit Judges, and BECKER,** Senior District Judge.

HEANEY, Circuit Judge.

Wayne Tennant appeals from an order of the district court affirming the decision of the Secretary of Health and Human Services denying Tennant Social Security disability benefits under 42 U.S.C. § 423. We reverse and hold that Tennant is entitled to benefits.

Tennant filed an application for disability benefits on January 26, 1979, alleging a

---

* The Honorable J. SMITH HENLEY assumed senior status on June 1, 1982.

** The Honorable WILLIAM H. BECKER, United States Senior District Judge for the Western District of Missouri, sitting by designation.

disability onset date of August 26, 1976. A hearing on the application was held before an administrative law judge on October 16, 1979. The ALJ concluded that Tennant was not disabled. Tennant filed a request for review, and the Office of Hearings and Appeals of the Social Security Administration remanded the case to the ALJ for further proceedings. The ALJ, without taking further evidence, again found that Tennant was not disabled and, therefore, is not entitled to benefits. The ALJ's decision was affirmed by the Appeals Council. Tennant then filed this action to review the Secretary's decision. The district court entered a judgment for the Secretary on the pleadings, and Tennant appeals.

The administrative law judge found that Tennant suffers from three impairments: (1) a personality disorder termed "inadequate personality;" (2) corns and calluses on his feet; and (3) nystagmus of the eye. The ALJ further found that as a result of these impairments, Tennant is unable to perform his previous work. The ALJ concluded, however, that Tennant has the residual functional capacity for light work and is, therefore, not "disabled" within the meaning of the Social Security Act.[1]

The ALJ was clearly correct in finding that Tennant suffers from the impairments noted above. Although there is evidence that Tennant does have eye and feet problems, his personality disorder is the more serious impairment and is the primary basis for his disability claim.

The *Diagnostic and Statistical Manual of Mental Disorders* published by the American Psychiatric Association defines "inadequate personality" as a "behavior pattern characterized by ineffectual responses to emotional, social, intellectual and physical demands." A person with this disorder may seem "neither physically nor mentally deficient," but will "manifest inadaptibility, ineptness, poor judgment, social instability, and a lack of physical and emotional stamina."

Tennant has been repeatedly diagnosed as suffering from this personality disorder. Dr. David R. Franks, a psychiatrist at the Creighton University School of Medicine, examined Tennant on February 7, 1979. He concluded that Tennant "can appropriately be described as an inadequate personality with limited intellectual and physical resources which renders him pretty inept at dealing with everyday things both interpersonally, socially and vocationally. This is compounded by a chronic anxiety which impairs him further." He reiterated this diagnosis in a later report, dated April 7, 1980, adding that, "I do not see how it can be argued that a personality disorder such as this is not seriously and permanently disabling." Dr. Charles Landgraf, a psychiatrist who examined Tennant on three occasions—June 21, 1977, July 7, 1978 and February 23, 1979—similarily concluded that Tennant suffers from an "inadequate personality." Landgraf also noted that Tennant's "personal habits have always apparently been rather primitive" and "[h]is ability to relate appropriately to co-workers and supervisors of course is not up to usual * * *."

Other psychiatrists who examined Tennant recognized the dysfunctional nature of his personality, but were reluctant to neatly "pigeonhole" the disorder. Dr. James R. Dunlap conducted a psychiatric examination of Tennant on February 5, 1979, and concluded that the claimant "is low average to borderline intelligence, comes from a very deprived background and has functioned on an inconsistent, unstable basis most of his life. I feel that he is suffering from a personality disorder with perhaps both asocial and inadequate characteristics." Another extremely comprehensive psychiatric evaluation was provided by Dr. Beverley Mead, Chairman Emeritus of the Department of Psychiatry at Creighton

---

1. The Social Security Act defines "disability" as an

   inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

   42 U.S.C. § 423(d)(1)(A)(1976).

University School of Medicine. Dr. Mead concluded that

> Mr. Tennant presents the interesting problem of multiple minor impairments. I do no[t] see a single psychiatric diagnosis as being particularly significant *although he could be considered an inadequate personality* and judging by his history, at one time might have been an antisocial personality. * * * [T]here is no single impairment significant enough in itself to be disabling. I feel however, that it is very important to note the tremendous number of complex contributing impairments. He is of short stature, probably less than average strength for a man his age, he has a bad eye, slight speech impairment, poor coordination, he has emotional lability with a low threshold for anxiety, less than average IQ., limited general knowledge, no identifiable skill, *inadequate personality*, reformatory record, failure to benefit from repeated training programs, and possible paranoid tendencies. Collectively, all these factors could be considered as very significant. [Emphasis added.]

The regulatory scheme contemplates that claimants suffering from disabling personality disorders may be entitled to Social Security benefits. The "Listing of Impairments" that the Secretary has "considered severe enough to prevent a person from doing any gainful activity," 20 C.F.R. § 404.1525(a) (1981), include "Functional nonpsychotic disorders (psychophysiologic, neurotic, and *personality disorders*; addictive dependence on alcohol or drugs). § 12.04, Appendix I to Subpart P, 20 C.F.R. § 404.1501, *et seq.* (1981) (emphasis added). *See Stone v. Harris,* 657 F.2d 210, 212 (8th Cir. 1981) (remanding case to the Secretary to consider effect of claimant's personality disorder).

Although the ALJ found that Tennant has a personality disorder, and noted that "[a]n inadequate personality may be disabling," he concluded that Tennant is not disabled within the meaning of the Social Security Act. The ALJ reached this conclu-sion on the basis of the Medical-Vocational Guidelines set out in Appendix 2 to Subpart P of Part 404 of the Secretary's regulations. The ALJ made the requisite underlying factual findings: that Tennant is a "younger individual" with "limited education," whose previous work experience was "unskilled," and that he has the physical capacity to perform light work. The ALJ stated that based on these findings, the medical-vocational "grid," specifically Rule 202.17, "directs a conclusion [that claimant] * * * be found 'not disabled.' " The ALJ found that the result would be the same whether the claimant's exertional limitations alone or his exertional and nonexertional limitations in combination were considered.

The ALJ erred in relying on the Medical-Vocational Guidelines to reach his determination that Tennant is not disabled. His first finding—that Tennant's physical ability to perform light work renders him "not disabled" under the grid—is irrelevant as Tennant's exertional abilities were not seriously at issue.

■ The ALJ's alternative finding—that Tennant's exertional and nonexertional limitations considered together lead to the same result under the grid—also misses the mark. There is no question that Tennant's primary impairment, and the one on which he has at all times based his claim, is his personality disorder—a nonexertional impairment. *See McCoy v. Schweiker,* 683 F. 2d 1138, at 1148 (8th Cir. 1982). The introduction to the Medical-Vocational Guidelines states that "[t]he rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(1). The grid may be used as a "framework" for determining claims based on a combination of strength and nonexertional limitations. *See id.* at § 200.00(e)(2). In a case such as this, however, where the evidence of exertional limitations is extremely limited,[2] and the dis-

---

2. Dr. Mead commented that Tennant is of "probably less than average strength for a man his age." Dr. David Krohn, a physician who examined Tennant on March 28, 1979, and

pute focuses on whether the claimant has the emotional capacity to engage in sustained employment, resort to the grid is inappropriate. *See McCoy v. Schweiker, supra,* at 1148; *Torres v. Secretary of HHS,* 668 F.2d 67, 69 (1st Cir. 1981). And we agree that "[i]n a decision by an ALJ leaning on the 'Guidelines' in some measure for its ultimate conclusion it would be difficult, if not impossible, to be certain that the 'Guidelines' had not unduly influenced the overall decision by tainting an area in which they should not have been considered at all." *Torres v. Secretary of HHS, supra,* 668 F.2d at 69.

The ALJ's erroneous reliance on the Medical-Vocational Guidelines would, therefore, at least necessitate a remand for a redetermination of Tennant's disability claim. "Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate." *Lewin v. Schwieker,* 654 F.2d 631, 635 (9th Cir. 1981). Reversal is appropriate in this case because a remand would serve no purpose. The record has been fully developed, and the overwhelming weight of the evidence supports Tennant's claim.

■ As we have noted, the medical evidence unequivocally shows that Tennant suffers from a personality disorder. This evidence led the ALJ to conclude that Tennant cannot engage in his previous work. The burden, therefore, shifted to the Secretary to show that there is other substantial gainful activity that Tennant can perform. *Martin v. Harris,* 666 F.2d 1153, 1155 (8th Cir. 1981); *Stone v. Harris,* 657 F.2d 210, 211 (8th Cir. 1981); *Beasley v. Califano,* 608 F.2d 1162, 1166 (8th Cir. 1979). The Secretary did not meet this burden.

The most compelling evidence relates to Tennant's work history. Tennant has held *forty-six* jobs in his twelve years of employment. His longest tenure at any job was six months. It appears that he has been fired from most of these jobs.

Tennant has consistently demonstrated a desire to be gainfully employed, but has met with little success. He has been through a number of job training programs, but has never progressed in them to the satisfaction of his supervisors. His experience in the "real world" has been no better. An affidavit filed by Tennant's former supervisor at Great Plains Container Company is illustrative. The supervisor agreed that "regardless of what job was assigned to [Tennant] * * * he show[ed] a lack of capacity to improve upon his initial performance with any job and meet the minimum standards required to maintain his employment." The employer noted that Tennant made an effort to do the jobs assigned to him, and indicated a desire to retain any job they would give him, "but [he] seemed to foul up everything he tried to do."

Tennant was discharged from his last job in September, 1978. In the three months following, he unsuccessfully applied for unskilled labor jobs with at least five businesses. Tennant has also sought help from the state employment agency in Hastings, Nebraska, but, according to his testimony, they refused to refer him out on jobs because "you give us a bad reputation." His attempts at self-employment, such as cutting lawns, have been similarly doomed.

There is virtually no evidence in the record to support a finding that Tennant can engage in substantial gainful employment. The ALJ noted the report of Dr. Landgraf stating that Tennant "can easily be expected to sustain work and adequate attendance, and to meet production norms." Tennant's twenty-two year employment history belies this conclusion. Dr. Landgraf acknowledged that Tennant's personality disorder was medically indicated, but obviously did not have knowledge of how the disorder has actually affected claimant's performance in the marketplace.

The expert vocational testimony offered at the hearing can similarly be accorded

April 5, 1979, noted that Tennant suffered from mild anemia, and "shortness of breath probably

secondary to cigarette smoking." He considered both of these conditions to be minor.

little, if any, weight. The vocational expert, Dr. Roger H. Livingston, testified that Tennant could return to his former work or perform other jobs that exist in significant numbers in the national economy. He so testified in response to the ALJ's hypothetical questions, which asked the expert to "assume the nature and severity of the claimant's impairments as you know them to be" and "to assume the medical evidence that you've examined."

This Court has repeatedly warned that hypothetical questions posed to vocational experts in such circumstances should precisely set out the claimant's particular physical and mental impairments. *See, e.g., Martin v. Harris*, 666 F.2d 1153, 1155 n.1 (8th Cir. 1981); *Gilliam v. Califano*, 620 F.2d 691, 693–694 (8th Cir. 1980); *Stephens v. Secretary of HEW*, 603 F.2d 36, 41 (8th Cir. 1979). A more carefully worded hypothetical might have elicited probative vocational testimony in this case. As it is, however, the vocational expert exhibited no comprehension of the limits imposed by Tennant's impairment. Dr. Livingston addressed himself to the exertional and skill requirements of various jobs that he thought Tennant could perform. He concluded that "there is no evidence to indicate that [claimant] has any *physical* limitations that would prevent him from performing the normal routine duties of a job." (Emphasis added.) Dr. Livingston never mentioned any of the manifestations of Tennant's personality disorder, such as his anxiety, emotional instability and general ineptness, nor did he indicate how the disorder might affect Tennant's vocational potential. His testimony, therefore, does not support a conclusion that there is work that Tennant can perform for a sustained period.

For the reasons stated above, we find that Wayne Tennant is disabled within the meaning of 42 U.S.C. § 423(d)(1)(A). Accordingly, we reverse the judgment of the district court affirming the decision of the Secretary. We remand to the district court with directions to enter judgment for Tennant, awarding him benefits under 42 U.S.C. § 423 as of August 26, 1976, and any Supplemental Security Income benefits to which he also may be entitled.