Robert H. ORR, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 80–1098–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Feb. 2, 1983.

---

Robert E. Hart, Kansas City, Mo., for plaintiff.

Robert G. Ulrich, U.S. Atty., Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDERS

### I.

JOHN W. OLIVER, Senior District Judge.

This Social Security case, filed pursuant to 42 U.S.C. § 405(g), pends for review of the final decision of the Secretary on cross motions for summary judgment.

On June 11, 1979, plaintiff filed his application (Tr. 76–79) to establish a period of disability, as provided in section 416(i), and to obtain disability insurance benefits, as provided in section 423. The application received consideration and reconsideration by the Social Security Administration (Tr. 104–05, 109–10, 111) and the claim was denied.

On March 21, 1980, at plaintiff's request, a hearing was held, at which he appeared and testified. (Tr. 44–75) Plaintiff was represented by counsel at the hearing. On April 30, 1980, the administrative law judge (ALJ) rendered a decision unfavorable to plaintiff. (Tr. 23–35) He found that plaintiff was not under a "disability" as defined in the Social Security Act at any time when he met the earnings requirement of the law. Plaintiff last met the earnings requirement on December 31, 1978. On October 14, 1980, after considering evidence in addition to that which was before the ALJ (Tr. 311–22) and contentions raised by plaintiff's counsel (Tr. 16–18), the Appeals Council of the Social Security Administration affirmed the decision of the ALJ. (Tr. 13–14)

The Appeals Council subsequently received correspondence from Senators John C. Danforth and Thomas F. Eagleton enclosing a copy of plaintiff's letter dated October 30, 1980 and a July 9, 1980 report from Gordon L. Thorn, D.O. After reviewing plaintiff's contentions and the additional report from Dr. Thorn, the Appeals Council found no reason to warrant changing its action of October 14, 1980. (Tr. 5–7)

Plaintiff then sought judicial review. On June 26, 1981, the Court considered the

Joint Motion to Remand filed by defendant and plaintiff and remanded the case to the Secretary for further administrative action. On August 12, 1981, the Appeals Council of the Social Security Administration vacated its denial of plaintiff's request for review and the decision of the ALJ and remanded the case to an ALJ for further proceedings. (Tr. 341–42)

On December 3, 1981, a supplemental hearing was held at which plaintiff, his treating physician, and a vocational expert appeared and testified. (Tr. 343–89) Plaintiff was represented by counsel at that hearing. On February 16, 1982 the ALJ rendered a recommended decision unfavorable to plaintiff. (Tr. 327–35) He found that plaintiff was not under a disability at any time commencing on or before the date of December 31, 1978, the last date he met the insured status requirements of the Act. On April 27, 1982 the Appeals Council adopted the findings and conclusions in the recommended decision. (Tr. 324–25) That determination now stands as the final decision of the Secretary.

## II.

### A. *Plaintiff's Testimony*

The plaintiff was born on October 11, 1923, is 5′8″ tall, weighs 175 pounds and is right handed. He attended school through the 12th grade and has worked primarily as an investigative insurance adjuster dealing primarily with accident and bodily injury claims. That work required extensive driving and walking, occasional lifting, stooping and bending, and extensive writing.

Plaintiff testified (Tr. 48–73) that he became unable to work because of back, neck and shoulder problems, an injured knee, ankle and right wrist, and a kidney infection. He testified that he has had a series of accidents and traumatic injuries in the past including automobile accidents in 1976, 1962 and 1954 and serious falls in 1978, 1977, 1973 and 1967.

Plaintiff attempted to work as a self-employed investigator and adjuster up until August, 1978. He testified that he could no longer work because of extreme pain in his neck and shoulders especially when he had to drive or sit at a desk for extended periods. He testified that he could no longer write for long periods, where previously he had been able to write long handwritten statements; that his right ankle, foot, and knee were in poor condition; that he could not walk very well; and that he had a urinary infection for which he took medication.

### B. *Medical History*

On February 20, 1972 the plaintiff was admitted to Research Hospital, Kansas City, Missouri, after a fall which resulted in severe pain in the right lumbar area. There was no evidence to substantiate a diagnosis of rheumatoid or gouty arthritis but plaintiff was felt to have suffered traumatic osteoarthritis of the vertebral speculas (Tr. 121–29).

In January, 1973, plaintiff was again admitted to Research Hospital for neck pain. W.H. Graham, M.D., plaintiff's treating physician at that time, noted that plaintiff was suffering from considerable pain, could hardly move his neck, had had severe pain since 1963, and required sedation to sleep at night. (Tr. 134) Plaintiff was diagnosed as suffering from degenerative spur formation at the end plates of the lower 3 cervical disc spaces and minimal anterolisthesis of C,2 over C,3 and slight limitation of motion. (Tr. 136) Dr. Graham in a February 19, 1973 report stated "Regardless of the tests, regardless of the findings, the man still complains of pain and has very definite spasm in his neck and some findings of osteoarthritic spurring."

On March 1, 1974 H.B. Overesch, M.D., examined plaintiff. Plaintiff was complaining of foot and ankle pain, as well as back, neck and shoulder pain resulting from a fall in 1973. Dr. Overesch concluded that the plaintiff had sustained a soft tissue sprain and strain in both the cervical and lumbosacral spine areas as well as an avulsion type fracture of the right foot, probably a talus fracture, as well as a spur on the dorsum of the talus. The plaintiff was stated to have had prior injuries to the

right foot and this could have prolonged the plaintiff's recovery and caused complications. Dr. Overesch felt that the plaintiff would have permanent residual disability as a result of this 1973 injury. (Tr. 139–42)

On September 23, 1974, plaintiff was admitted to Lakeside Hospital, Kansas City, Missouri, with a diagnosis of left renal calculus, as well as complaints of back and neck pain. (Tr. 143–61) Upon admittance, W.J. Monaghan, D.O., described plaintiff's complaints since the 1973 fall stating that plaintiff "has suffered from chronic, recurrent, acute cervical sprains and pain and discomfort in his right shoulder. He has been treated for a chronic tendonitis of the right rotator cuff with some success, however, his neck and shoulder pain continues." (Tr. 144)

Records from Dr. Monaghan include a medical report dated May 8, 1974 and a medical report dated March 26, 1976. Dr. Monaghan examined plaintiff on January 7, 1976 and reported that the plaintiff complained of severe neck pain which tended to radiate to his right arm and upper back, as well as low back pain. Examination revealed no limitation of motion of the lumbar spine but there was noted tenderness in the L5–S1 level with mild tenderness of the paravertebral muscles bilaterally.

Dr. Monaghan reported that the plaintiff's automobile accident in 1976 resulted in injuries to the head, neck, low back, and right ankle and that the plaintiff has had a history of repeated injuries to the neck and low back. Dr. Monaghan then stated that after multiple injuries, symptoms involving the cervical spine do develop and eventually the injured area becomes highly intolerant to any type of trauma and subsequent injuries could precipitate symptoms which are severe and highly resistant to treatment. (Tr. 162–94)

The record also contains a hospital report from Research Hospital covering the period October 17 through November 10, 1977. Jay I. Rozen, M.D., in a radiology report, states his impression that plaintiff suffered from degenerative disc disease at L5–S1. (Tr. 227) Stanley D. Wells, M.D. in a second radiology report, states that plaintiff suffered from degenerative arthritic changes in the cervical spine. (Tr. 228)

In March, 1978, James H. Whitaker, M.D., an orthopedic surgeon, reviewed his examinations of plaintiff in a report—he had examined plaintiff on at least five occasions from 1976–1978. Dr. Whitaker reported that plaintiff sustained an acute flare-up of a pre-existing chronic lumbosacral strain as a result of the fall on or about November 26, 1977, as well as a hyperextension injury to his dominant right wrist with secondary carpal bone instability resulting from this. As a result of a 1977 robbery attempt, Dr. Whitaker noted that plaintiff sustained an acute cervical and lumbosacral strain. (Tr. 229–31)

In February, 1979 the plaintiff underwent surgery for treatment of an internal derangement of the right knee as well as left renal calculus. He underwent a right knee arthrotomy on February 16, 1979. Plaintiff had injured his knee in a 1978 fall. (Tr. 232–35)

A July 31, 1979 report from Dr. Whitaker traces plaintiff's problems after the knee surgery. On May 4, 1979 plaintiff was readmitted to Research Hospital with a diagnosis of acute flare-up of a chronic lumbosacral and cervical strain condition as well as mild painful arthrofibrosis in the recently operated knee. Subsequent to discharge, plaintiff was seen by Dr. Whitaker in June and July, 1979 with continued complaints of right shoulder and knee discomfort. The plaintiff's neurological examination was negative. (Tr. 259–60)

On October 3, 1979 Dr. Whitaker again reviewed plaintiff's condition and stated that plaintiff suffered from a multiplicity of orthopedic complaints: chronic cervical and lumbosacral strains, bilateral shoulder adhesive capsulitis, and calcific tendonitis, as well as right knee arthrofibrosis and early degenerative arthritic conditions. He stated that he was not optimistic that plaintiff could return to work and that he was not the least bit optimistic that this patient will ever be gainfully employed in the future. On November 8, 1979, Dr. Whitaker

expressed his opinion that, prior to December of 1978, the plaintiff was unable to carry out his duties as a pretrial accident investigator, and Dr. Whitaker had no hesitancy to rate plaintiff a "total disability" prior to that date.

On October 24, 1979, Gordon L. Thorn, D.O., wrote a letter describing plaintiff's condition. He stated that his office had seen plaintiff on several occasions. Dr. Thorn noted that plaintiff's condition had deteriorated over the last several years and he had to be hospitalized about every year over the last five or six years because of his arthritis, either to have therapy to his neck, his shoulder, his knee, or his ankle. He noted that, in 1976, x-rays were taken which noted a marked narrowing of the intervertebral disc at L5–S1 indicating a great deal of arthritis in that area. There were also arthritic spurs in the neck and osteophyte formation between C5 and C6 and this results in considerable restricted motion. Dr. Thorn noted that in the last year (October, 1978—October, 1979), plaintiff's condition had gotten markedly worse.

At the Secretary's request, plaintiff was examined by H. Joe Pryor, M.D. The diagnostic impressions of the plaintiff were listed as:

(1) cervical spondylosis with previously documented mild C5 radiculopathy,

(2) complaints of right knee pain and swelling, previously documented internal derangement of knee, probable early degenerative joint disease of the knee,

(3) right carpal bone instability,

(4) complaints of low back pain, probably due to degenerative disc disease,

(5) mild reduction in range of motion of right subtalor joint probably due to old fracture,

(6) complaints of paresthesias in ulnar nerve distribution bilaterally, probably due to mild ulnar nerve neuropathies, and

(7) left renal calculus and complicating pyuria.

On remand, the ALJ heard the testimony of the plaintiff, Dr. Thorn, and a vocational expert, Dr. Paul T. Correll. At the hearing, Dr. Thorn expressed that he thought, in December, 1978, the arthritis existed in a mild form, that it did not cause plaintiff a lot of discomfort, and "it was something that he could live with."

In response to a hypothetical question presented by the ALJ, setting out plaintiff's impairments as they existed prior to December, 1978, the vocational expert stated that the condition as described in the hypothetical question would "have made it impossible for him to have performed sedentary or lesser occupations at that time, primarily because one of the jobs he had—two of the jobs that he had during that period were sedentary jobs and he had to quit those." (Tr. 385) The ALJ then revised the hypothetical question by stating "I believe [plaintiff] indicated that the most trouble he had with those jobs was the fact that he had to drive and move around quite a bit and at times take equipment with him." (Tr. 386) Under that revision, the vocational expert stated that plaintiff might be able to work as a dispatcher, license clerk or work order clerk. (Tr. 386)

On examination by plaintiff's counsel, the vocational expert was asked to consider the related problems of getting to the job in view of plaintiff's testimony that he had trouble driving or using public transportation, of his use of fairly heavy medication during the day, the neck trouble and difficulty keeping his attention downward, and the wrist problems and trouble with writing. If these factors are put into the hypothetical question, the vocational expert stated that the alternative jobs listed would be practically unperformable by the plaintiff. (Tr. 386–87)

### III.

■ A final decision of the Secretary is conclusive provided it is based upon facts which are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence means more than a scintilla of evidence; it means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). And the applicable standard of review is more than a rubber stamp for the Secretary's decision and is more than a mere search for the existence of some substantial evidence supporting the Secretary's decision. *McMillian v. Schweiker,* 697 F.2d 215 (8th Cir.1983).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). Once the claimant establishes that his impairment is so severe that he cannot engage in his former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful employment. *Tucker v. Schweiker,* 689 F.2d 777, 779 (8th Cir.1982); *Martin v. Harris,* 666 F.2d 1153, 1155 (8th Cir.1981).

In the present case, the ALJ made the following findings:

1. That the claimant filed an application for a period of disability and for disability from August 1978. The claimant was denied through all administrative levels and he thereafter commenced an action in the U.S. District Court, Western District of Missouri resulting in a Court Remand. That the claimant is not engaging in substantial gainful activity as defined in 20 CFR § 404.1573–1575.

2. That the claimant last met the special earnings requirements of the Social Security Act, as amended, on December 31, 1978, and not thereafter.

3. That the claimant was born on October 11, 1923, in the State of North Carolina, and has been administratively classified under the provisions of 20 CFR § 404.1563(d) as an individual of advanced age, has an eleventh grade education and on that account has been administratively classified under 20 CFR § 404.1564(3) as a person with a limited education.

4. That the medical evidence establishes that the claimant suffers from lumbo-sacral and cervical strain, left nephrolithiasis, and healed fracture of the right foot, but his allegation of constant, severe, and unabated pain in his neck and shoulders was not established by the evidence to be disabling prior to December 31, 1978, and such pain and impairments do not restrict his physical ability to perform sedentary to light work in a significant way, neither singly nor in combination under the provisions of 20 CFR § 404.1504, nor the listings prescribed in 20 CFR § 404.1513.

5. That the claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before December 31, 1978, which has lasted or could be expected to last for at least twelve months.

6. That the claimant was therefore not under a "disability" as defined in the Social Security Act, as amended, at any time on or prior to December 31, 1978.

After reviewing the record, we find and conclude that the record establishes that the plaintiff, on or before December 31, 1978 was unable to perform his former occupation and that the Secretary's finding that plaintiff was not prevented from engaging in any substantial gainful activity for any continuous period on or before that date is not supported by substantial evidence.

The evidence in the record establishes that plaintiff met his initial burden by proving that, on or before December 31, 1978, he could no longer perform his job as a pretrial accident investigator due to his medical problems. Apparently, the ALJ came to the same conclusion by stating that "The Administrative Law Judge is convinced and so finds that the claimant, within the time frame heretofore mentioned, was unable to perform relevant work which, according to his testimony involved strenuous exertional demands." (Tr. 333). Thus, the burden shifted to the Secretary to prove that plaintiff could perform some

other type of substantial gainful employment in the national economy.

The Secretary, however, has not met that burden. The ALJ stated that plaintiff's claims of pain in his neck and shoulders were not established by the evidence to be disabling. It is apparent from the ALJ's opinion that the ALJ places undue emphasis on objective medical evidence of plaintiff's pain. "Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the administrative fact finder must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant." *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978), cited and followed most recently in *McDonald v. Schweiker,* 698 F.2d 361 (8th Cir. 1983).

Moreover, there is ample evidence in the record to establish plaintiff's allegations of severe and disabling pain. Plaintiff suffered numerous traumatic experiences which injured or aggravated his neck and shoulder problems. Dr. Monaghan explicitly stated that after multiple injuries to the neck and back, symptoms involving the cervical spine do develop and the injured area becomes intolerant to any type of trauma and highly resistant to treatment. Plaintiff's medical history includes numerous visits to hospitals and doctors because of neck and shoulder pain.

The record also shows that plaintiff had severe problems in addition to back, neck and shoulder pain. These problems included pain, weakness, stiffness and swelling in his knee, ankle and foot; right wrist injury; and a urinary infection. All of these ailments can be traced to a series of traumatic accidents and injuries documented by hospital and doctor visits. The doctor who treated plaintiff most frequently, Dr. Whitaker, stated that, in his opinion, on or prior to December, 1978 plaintiff was a total disability. The ALJ states that such opinions are not controlling. This is true, but it is one of the factors that the ALJ must seriously consider. *McMillian v. Schweiker,* 697 F.2d 215 (8th Cir.1983).

Finally, since there was not substantial evidence bearing directly on the issue of substantial gainful activity from other sources, it was necessary for the ALJ to consider the testimony of the vocational expert. *McCoy v. Schweiker,* 683 F.2d 1138, 1149 (8th Cir.1982). We conclude that the hypothetical question as modified by plaintiff's attorney was a precise and specific recitation of plaintiff's physical impairments. *Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir.1982). The vocational expert, in response to this hypothetical question, stated that the alternative sedentary jobs mentioned would be practically unperformable by plaintiff.

We find and conclude that there is substantial evidence in the record to establish that plaintiff was unable to return to his past relevant work as a pretrial accident investigator because of his disabilities. We further find and conclude that there is not substantial evidence in the record to support the Secretary's findings that plaintiff has the residual functional capacity to perform sedentary to light work in a significant way. Furthermore, "Reversal is appropriate in this case because a remand would serve no useful purpose. The record has been fully developed, and the overwhelming weight of the evidence supports [plaintiff's] claim." *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982).

## IV.

For the reasons stated, it is

ORDERED (1) that plaintiff's motion for summary judgment should be and the same is hereby granted. It is further

ORDERED (2) that defendant's motion for summary judgment should be and the same is hereby denied. It is further

ORDERED (3) that the final decision of the Secretary should be and the same is hereby reversed and remanded with directions to distribute Social Security Disability Insurance benefits to plaintiff in accordance with his application.