**Roy L. SHARRAH, Appellant,**

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, United States of America, Appellee.**

**No. 84–1172.**

United States Court of Appeals, Eighth Circuit.

Submitted July 11, 1984.

Decided Oct. 31, 1984.

John R. Gibson, Circuit Judge, filed a dissenting opinion.

Troy R. Douglas, Fort Smith, Ark., for appellant.

W. Asa Hutchinson, U.S. Atty., Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., Frank V. Smith, III, Regional Atty., and W. Emmitt Roberts, Asst. Regional Atty., Dept. of Health and Human Services, Dallas, Tex., for appellee.

Before HEANEY, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Roy L. Sharrah appeals from a final judgment of the District Court for the Western District of Arkansas affirming the Secretary's denial of his application for supplemental security income (SSI) benefits. For reversal appellant argues that (1) the district court erred in finding that the

Secretary's decision was supported by substantial evidence and (2) the Secretary's decision violated applicable regulations. For the reasons discussed below, we reverse the judgment of the district court and remand to the Secretary for further proceedings.

Appellant applied for SSI benefits on March 18, 1981. His claim was denied on August 4, 1981, and appellant failed to appeal. On December 22, 1981, appellant filed a second application for SSI benefits. An administrative law judge (ALJ) conducted a hearing on appellant's application on April 22, 1982. At the time of the hearing appellant was thirty-six years old. He had a seventh grade education and had formerly been employed as a fence installer, tree trimmer and fruit picker.

The medical evidence presented in support of appellant's application revealed that in early 1977 appellant underwent a right parietal craniotomy to remove an intracerebral hematoma. Upon release from the hospital he was placed on Dilantin therapy to control a seizure disorder resulting from the surgery. A report from Dr. Stephen Parker dated July 29, 1981, indicated that appellant was suffering from chest pains originating in the chest wall. Dr. Parker found no arteriosclerotic heart disease, but noted that appellant slightly limped on his left side and had a subjective decrease of strength in his left arm and leg. A report from Dr. Aubrey L. Travis dated December 3, 1980, concluded that appellant was unable to do any work requiring the coordinated use of his left hand or any significant amount of fine motor coordination. Dr. Travis found that appellant's grip strength on his left side was decreased and he was weak in the left lower extremity in his biceps, triceps, and brachial radialis. In a report dated February 5, 1982, Dr. Stephen Manus wrote that appellant was experiencing tenderness in the upper portion of his abdomen, chest pain, blackout spells, and dizziness. Dr. Manus recommended that appellant restrict his physical activities, avoid heights and not operate any machinery. Dr. Manus indicated appellant could do sedentary work if he did not have to use his left arm or leg.

Dr. Charles Reul, a neurologist, examined appellant on February 16, 1982. Dr. Reul indicated that appellant had light seizures usually related to nervousness during which he was short of breath, hyperventilated, and experienced vision blurring, dizziness and numbness. A CT brain scan revealed a large, low density, nonenhancing lesion in the right hemisphere. Appellant's electroencephalogram was abnormal showing increased voltage in the right posterior hemisphere with an intermittent slow wave focus. Dr. Reul's diagnosis was that appellant had status post hemorrhage to the right posterior hemisphere; probable mild personality behavior disorder secondary to the hemorrhage; probable mild left hemisensory loss secondary to the hemorrhage; and muscle contraction headaches secondary to chronic anxiety depression disorder. Dr. Reul recommended that appellant continue on Dilantin and begin taking Elavil and Endep.

Appellant returned to Dr. Reul on April 2, 1982, because his headaches had not improved. Dr. Reul reaffirmed his original diagnosis and added:

> As far as his disability is concerned, I would feel he has a very mild amount of discoordination or incoordination in his left arm and leg, and it would prevent him from doing fine motor tasks involving the left side, and I would feel he is neurologically disabled as far as this is concerned. As far as any other job limitation, I would feel this is only related to whatever the level of his intellectual function is and this could only be determined by full psychological testing. This might or might not relate to either some impairment secondary to his cerebral hemorrhage or his original intellectual endowment or a mixture of both. I cannot determine this.

Appellant testified at the hearing that he had limited feeling in his left arm, could not distinguish hot or cold, had no grip, and suffered from a constantly swollen left foot. Appellant had no significant daily

activities and stated he could not walk for any distance. Appellant further indicated that he was dizzy most of the time. Appellant's wife testified that she had to assist her husband in dressing and getting in and out of the bathtub. She stated that the least exertion caused appellant to sweat profusely and become short of breath. She further asserted that appellant was partially paralyzed on the left side, had a hearing and memory loss, and had light seizures.

After considering the entire record, the ALJ found that appellant lacked the residual functional capacity (RFC) to do sustained sedentary activity and was therefore disabled within the meaning of Title XVI of the Social Security Act as of March 18, 1981. The Appeals Council on its own motion reviewed the ALJ's decision and concluded that appellant was not disabled. The district court affirmed and this appeal followed.

On appellate review we must evaluate all of the evidence on the record to determine whether the Secretary's decision is supported by substantial evidence appearing on the record as a whole. *Brand v. Secretary of HEW*, 623 F.2d 523, 527 (8th Cir.1980). This standard of review requires more than a search for evidence supporting the Secretary's findings; "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). In the present case the overwhelming weight of the evidence supports appellant's claim.

The Secretary found that appellant's impairment was not severe because "his only limitations result from a mild impairment of his non-dominant arm which would not be expected to significantly affect his ability" to engage in basic work activities. Decision of Appeals Council at 4. Basic work activities include physical functions such as walking, standing, sitting, lifting, pulling, pushing, reaching, carrying, or handling; understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.-921(b) (1983). The medical evidence indicates that appellant is unable to perform many of the physical functions listed above, has memory lapses and behavioral disorders resulting from his craniotomy, and experiences muscle contraction headaches, dizziness and mild seizures. Moreover, the evidence indicates that appellant is incapable of performing any substantial gainful activity. Clearly appellant lacks the "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982) (banc).

"Reversal is appropriate in this case because remand would serve no purpose." *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982). We hold that appellant was disabled as of March 18, 1981. Accordingly, we reverse the judgment of the district court affirming the decision of the Secretary and remand to the district court with instructions to remand appellant's claim to the Secretary for computation and award of benefits.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. The Appeals Council concluded that the ALJ did not provide any evaluation of the evidence in determining how the claimant's impairments limited his residual functional capacity. It pointed to the evidence in the record that Sharrah had a mild amount of incoordination in his left arm and leg and would not be able to do any kind of work that would require fine coordination of those limbs. It then concluded that there were numerous sedentary, unskilled jobs that Sharrah could perform despite this mild impairment. Considering the principles set out in the court's opinion today and the reports of the physicians there discussed, I cannot conclude that the decision of the Appeals Council is not supported by sub-

stantial evidence on the whole record. Accordingly, I would affirm.